Good morning, your honors. Glenn Nunes on behalf of the Council of Helen Youchan Lee. This action creates a PIMS attraché group of former employees in California from January 1, 2005 through 2014. The state alleges that a conspiracy began in 2006. In 2010, the U.S. Department of Justice filed a section against numerous lie-telling companies, including Intuit. I think we're familiar with the background of the case where D-001 argued, quote, your honors, in justification by our institution that the amount of restitution being received by the PIMS attraché group is adequate. The court states that the claims against many of the employees in the group would be time-barred. This is a function of the flu that the PIMS attraché group goes back to January 1, 2005. In a case where the conspiracy begins, according to the state, in 2006, there's no explanation of why the PIMS attraché group contains individuals going back to 2005 when the conspiracy begins in 2006. But it's not compelling. It should not be compelling that members of the group would have claims that are time-barred when they were not the individuals who were harmed if they did not work for the companies in 2006 when the conspiracy began. So the primary justification that the District Court relies upon, that the amount of $2.375 million of restitution will be adequate, the primary justification for that that the District Court uses, that the claims of many employees would be time-barred, is based on a function of the fact that the PIMS attraché group includes over a year's worth of employees who were not injured because they predated the conspiracy. In addition to this, the states, the employees that were actually harmed by eBay and Intuit's conduct, and additional groups receive compensation instead of the employees in a SEPRE fund of about a billion dollars. This fund provides funds to numerous, certainly laudable groups. Prison employees receive training in technology and employment. Underserved students in the Central Valley and Northern California and Los Angeles receive funds for technology training. These are certainly laudable charities. But the District Court was required to ask, first of all, is it necessary to provide... Can I ask, did you file an objection once the, it was known, the District Court made it known that he was going to accept the SEPRE distribution amount, or the plan that had been submitted? The distribution, the objections regarding the SEPRE were impossible to make until they were granting final distribution, because the District Court never considered which groups would receive compensation as SEPRE beneficiaries until the final order at the hearings for preliminary approval. No groups had been identified. Well, so I wanted to talk about the timing on that, because it looks like the distribution plan was filed on August 6th, 2015. Is that correct? I think that's correct. Yeah, okay. And then there was supposed to be a hearing in early September. I think September 10th, right around there. But then before that, I think it was September 3rd, the District Court vacated the hearing and accepted the plan. And I'm just trying to drill down on the timing and whether or not after the court said, if you or your client would be able to weigh in on whatever the plan might be, if you had adequate opportunity. And so can you fill in some of these blanks or argue to me why you didn't have adequate opportunity? Yes, Your Honor. I think because of the fact that no one, none of the class members received in the notice any indication of what groups would be receiving SEPRE funds, that it would have been premature to expect individuals in the PIMS press group to object at the time. But once the District Court issued its order, you would have had the opportunity to ask for reconsideration, which it was since the hearing had been vacated. Yes, Your Honor. So the question, I think the question is, how did you raise this? How did the District Court have an Well, Your Honor, I believe the, well, first of all, it's a mistake of law. Are you saying you didn't raise it? I know that it was, it is raised in the opening brief. Your Honor, I would say, when it was raised in the opening brief, it was perhaps raised inartfully, suggesting that the settlement fund was unfair, and perhaps could have been more artfully raised as a direct attack on the SEPRE fund itself. It was, it was, it was included in the opening brief argument concerning the fact that the amount of the settlement that was going to the class, the group, the PIMS Petrition Group was inadequate. You're making a different argument today. Did you, it's fair to say you never raised that argument you're making today before the District Court, is it? I would say that the argument is included in the argument that was raised to the Court that the amount that was going to the PIMS Petrition Group was inadequate because the amount, not only was inadequate, the settlement had been inadequate. I mean, that's in terms of the sake of argument, but you have to, there's two separate arguments. One is the adequacy and fairness of the settlement, and the second is the distribution to the particular groups. Today, you're arguing that the distribution to the groups, regardless of the amount, was improper. Did you raise that to the District Court? I don't believe that it was raised to the District Court directly, except as to a challenge to the amount that the PIMS Petrition Group was to receive. However, I believe it's a, it's not a mistake of fact. It's a mistake of law that the, that the Ninth Circuit could today properly consider, because it's not a mistake of fact, it's a mistake of law, and the District Court was required to make an analysis of whether the side frame beneficiaries were proper. It conducted, it discusses it in the brief, excuse me, in the final order, and we would concede that one of the groups, side frame beneficiaries, one group does arguably provide funds that are, that go, that indirectly benefit class members, and that group would be the funds that are going to create education to current employees concerning antitrust violations. So it is proper, it is possible that a, it is possible that a side frame beneficiary could have been appropriate, and one we believe was appropriate, but I would say it's particularly important for the Court at this time to consider, even if it's for the first time, and it is discussed in the brief, in the opening brief, although very briefly, it is proper to consider it for the first time, because of the potential unseemliness of judges issuing awards to, to charities. While we may consider those highly laudable, that funds from, that funds are being taken from, are being, going from eBay to, to these laudable charities, nevertheless, it is somewhat unseemly for judges to be picking and choosing particular charities which they begin, believe it or not, are, and this fact, that actually, that happens all the time, of investment in these kinds of funds. It does happen all the time, yet I believe that federal judges are, are prohibited from publicly disclosing their charitable contributions. The, the second issue that I would like to discuss is what I referred to yesterday, as we discussed, as I discussed, the reason why the claims are time hard for numerous employees were because the Prince Patricia Clause extended back to 2005, even though the conspiracy begins in 2006. Verse 72, 15 U.S.C. Section 16I, the Institution of Civil or Criminal Proceedings by the United States, holds the sanction of limitations. Did you, did you raise this whole delay in discovery issue possibility before the district court? Well, Your Honor, it concerns the adequacy of the amount of settlement, and it's the, it's the reason that the district court itself provides. I'm not sure you answered my question, though. Mr. Nunez, did you raise it before the district court? And then, I guess the answer to that is, is no, but let's just assume we can further review your, your, your issue, your argument there. How many of the claimants do you think would still be capable of filing a timely claim based on this issue? Well, the, I think it would be most because the Department of Justice filing occurred in 2010. Prior to its resolution, the state filed its action, which, which also, we believe, tolls the statute's limitations. And so, under the statutory tolling argument, we believe that provides, provides tolling for these individuals. And, and in addition, potential continuing and eBay sued Google for anti-poaching. It's something that was staged by the district court in its order. I believe, excuse me, it was stated by the state of California in the third amended complaint. They stated that at least until that point in time, eBay was concerned about anti-poaching. So, under the doctrines of both continuing violations and statutory tolling and potentially fraudulent concealment, although that might be more difficult, we believe tolling could, would occur for most of the individuals. Your Honors, I'd like to reserve the rest of my time for rebuttal. Thank you, Counselor. Good morning, Your Honors. Nicole Horton on behalf of the Attorney General of the State of California. As you know, I'll be reserving three minutes for counsel from eBay. This trans-patriarch settlement should not be disturbed because the district court did not use its discretion. The district court's decision is correct for two reasons. First, by statute, parens patriae cases are non-class actions. Second, the record demonstrates that even if this court decides that the standards of Rule 23 should apply to a parens patriae settlement, the court carefully considered the settlement and properly applied the handling factors. Moving back to my first point, parens cases are non-class actions and the line between these two distinct methods of antitrust enforcement should not be blurred. Both the Clayton Act and the Cartwright Act require three things for a parens settlement. Notice, the opportunity to opt out, and court approval. The parens cause of action was never intended to supersede class actions but rather to strengthen enforcement of the antitrust laws. Congress or the California Legislature could have written in the requirements class actions and both chose not to. So is your opinion that these kinds of cases that the district court should not undertake an examination of the fairness of the settlement? Absolutely not. The district court should examine the fairness of the settlement. It should look at it thoroughly. Perhaps the standard of Rule 23 in class actions is not the most appropriate because they are different methods of antitrust enforcement and parens patriae cases have some things like the law on the greens and the class action standards. One of the questions I have is to whether or not that's the appropriate standard when you have a pure parens patriae case. A lot of the cases that have been cited supporting the class action standard were linked to the class action case or were rooted in a class action case and I'm just curious as to why then there wasn't a suggestion to maybe form a different standard that was more appropriate for parens patriae. We suggested the parens, the rule 23 procedure because it was a way to make sure we met we met the standard because it is a higher standard. Also it had been done in the northern district in a great DFTLCT, flat panel antitrust litigation. It had also been done in a second circuit. So it's been done and it seemed to be a nice framework to make sure there was preliminary approval that every step of the way the court was involved and that the the settlement would get the attention it needed. So are you arguing that it doesn't apply now? I'm not arguing that it doesn't apply. I'm arguing that these two kinds of cases are different. I just did in the papers that we received but I think it can apply. I mean I think you commenced your argument with the point that's sort of interesting is how are these different but all the way through litigation everybody agreed that the rule 23 standard is not to apply. Well we think this case survives under the rule 23 standard. I'm just asking if we had to conjure up a different standard what would it be? It would be one that there's no supposed to be a precedent on this issue. Well I don't know that's why I'm asking. It should be one that takes into account that law enforcement is involved. There should be some deference to law enforcement given that transpatriot is fundamentally an exercise of the attorney general's law enforcement authority and an exercise of sovereign. It seems, I mean I don't think you're going to present this, but it seems like the court may have to be reviewing or might be concerned about the elected official and whether the elected official is doing the right thing in pursuing this and is not doing it based on re-election concerns or the impact of bringing actions against employers who operate in the state. I mean I could see a whole host of issues that might be raised for a judge to examine and this is fair and that's why I wanted to inquire if you agreed that it sounds like you might, that perhaps a better or focused standard could be developed when reviewing transpatriot cases. It could, it just hasn't come up yet. So something modified that takes into account the different structure, the different concerns would be appropriate here. Well you're cut both ways because as Judge McGee has said, one might have a stricter view of approval, you're arguing for a more deferential view to the attorney general. So yes, I mean her point is you might cut it the other way in terms of demanding more certainty. It might. The case law has a plethora of examples of the inherent problems with class actions and the concerns about self-dealing. Those don't exist when it's not an elected official. The attorney general is exercising law enforcement authority, there is in place and addressed enforcement for both what the private class actions are and the private public transpatriot actions, but ultimately those elected officials will be subject to the electorate. Can I ask you about the math in this case? It looks like the plaintiffs recovered 12% of the estimated total, or your math indicates that the plaintiffs recovered 12% of the estimated total damages, and I think you make the argument this 12% is analogous to the 14% recovery in Selma that was approved in Enri Mago. Yes. I noticed that you used the entire $3.75 billion settlement amount, and I think that amount, and that's what I wanted to ask about, included the fees and penalties paid directly to California. Is that correct? That's correct. And so the district court, on the other hand, analyzed whether the settlement amount was adequate using the $2.375 million number, which I think is the amount that was set aside for the affected individuals. And so I'm trying to figure out, was it appropriate for the district court to use the $2.375 million number, or if that's the case, what's the authority for using the $3.75 million number that you're talking about? The reason I'm asking is, if we use the $2.375 million number, the affected individuals have only recovered, at least by my math, 7.8% of the estimated total damage, and that's using only the $31 million attributed to EPA, so is 7.8% enough? Yes. Under the case of Prince Patrick's settlement, we have no recovery for affected individuals. What case law is that? Because you say the case law for Prince Patrick, but most of our case law for Prince Patrick is class action. In Washington, D.C., a statutory Prince Patrick action may well result in a settlement that does not include restitution to victims of the fraud, but only results in penalties paid to the public treasury. Is that a pure Prince Patrick case, or is that a class action? I believe there was an associated class action. One of the reasons we don't have law here is because often there is only a class action. There just wasn't one in this instance. So even though you argue that 12% is analogous to the Henry Mango, it may be an inactuality, 7.8%. What's the basis for using the one number versus the other number? The 2.3 number versus the 3.1? Actually, in our footnote 9 of our brief, we referenced 7.7% of 30.8% of masturbated damages. It's within the range of the Mango Salt settlement. Which number? It actually doesn't matter which number. The settlement was fair. It was within the range of approval and preliminary approval stage, and the district court, at final approval, looked towards the handling factors, examined each element of the settlement, and found the amount to be fair. Generally, an objector's view that the settlement is not enough, as was decided lately. Facebook is not enough to send back the settlement. General dissatisfaction is not enough to destroy a settlement. I'd like to ask you about the subgrade board. It seems that we have a case in the Dennis versus Gallagher that we say that the subgrade board must account for certain things, the objectives of the underlying statute, the interest of the silent class members, and the non-benefit group to revoke when the claim is passed. I guess I'm just trying to figure out where, in the order that the district court assessed whether the claim is for benefit from the Cypress distribution. I don't believe that was directly addressed. I can address it to you. Well, with our law requires that the district court, I appreciate your willingness to address it here, and you can talk to me about whatever you wanted. I'm just trying to tie that in, but I think our case law, as you tell me otherwise, is the district court that has to make that assessment, and so I understand why Mr. Lee is a little frustrated because he went to that hearing, and he was told directly by the district court judge, you'll have, I promise you, you'll have an opportunity to, I'll get to hear all your objections. The Cypress plan was distributed or sent in, and then within a few days, the judge approved the plan and filed the judgment, and so I didn't see one where Mr. Lee had an opportunity in court, like he was told he would, to object or to comment on the plan, and I didn't see where the district court made these assessments of the award. The district court, we went in for final approval, and we had a plan for final approval for Cypress, because we were still figuring out and being extra careful on who those recipients would be. We filed that Cypress distribution proposal on August 6th, and final judgment was entered on September 10th. That was five weeks. He had five weeks to submit a papers or raise a hand or say anything about the Cypress recipients. They were public. They were identified down to a specific project that would be funded and the amount going to each. Where was the five weeks, because I thought that the plan was distributed, something happened to Kate Brown in the date series, and so I thought it was August, and then within days since September, the judge revised for August 6th, and the plan was distributed on August 6th. I apologize, I missed. So there was not five weeks. It looks like there was like five days. It was four weeks. The motion for final approval was granted on September 3rd. Oh, I'm sorry. I apologize, but that's still a month. Well, that was twice in their second hearing. The district court said, we're going to have another hearing on this, and that was when we heard it. The district court thought it was unnecessary and didn't call us in for a second hearing. That happens in that courtroom. He schedules hearings for Friday, and they tend to drop off, and you would watch the calendar, although counsel for Mr. Lee did not have responsibility for watching his calendar in style so closely. That seems to be how that courtroom works. Do you want to, I'm sorry, I won't give you time. Do you want to address the three minutes? I'll take a break. We'll give you a full three minutes. We'll give you your full three. Thank you, Your Honor. Tom Brown called these things for the evening. I'm not sure that I'm quite dragging, but I'm concerned with respect to the statute of limitations argument that the district court misanalyzed that because it concluded that there were statute of limitations issues, and in fact, your point of contention is that there were not. And I would submit, Your Honor, that the appropriate place to have that conversation would be in the parallel action that's been filed, where we again raise the statute of limitations arguments. We can go through the tolling analysis. It's an appropriate point for the district court to consider is not, I mean, in terms of whether or not it's fair, what's being offered, the three points. Sir, our willingness not to assert the statute of limitations concerns with respect to the parent's claim is an element of consideration associated with the settlement, and it's certainly an appropriate element to raise. And yet, had the concerns been raised below, we would have been happy to address them as we have in the general election for this court. Just a second. Why are some of the claimants' claims being time-barred by the statute of limitations? Well, because the rule in the Ninth Circuit is the discovery rule. In an antitrust case, it's basically predicated on your theory of damage. Here, the theory of damage is that wages were suppressed, and you discovered that at the time you received them. Then, is it possible that some of the claimants had a viable claim of delaying discovery? I think that's my main question. Yeah, I mean, I don't believe so, but again, given that those issues have been raised, we would address them as we have in the parallel district court action that's still pending, where our first motion to dismiss was granted on the statute of limitations rounds, and the case remains pending as in connection with a new complaint. I would, however, like to return, because I think this question goes back to the appropriate standard of review, which is, I know, an issue that the Court of Principle hasn't struggled with, both with respect to Cypher A and with respect to the amount of restitution. I think there is an analogy from the development of antitrust law related to the 20 Act, but in the role that the district court played prior to the Hart-Scalbrodino improvement amendments in the wake of the 18T and 19T Actings in the District Court's review, the court's role was relatively small. As you'll recall, Judge Green, in the 18T case, described it as something like a rubber stamp, the money to apply the new procedures under the 20 Act. I'm not saying that a pure rubber stamp is sufficient for affirming a variance case, but I do think that the important statutory distinction between the authority that the Attorney General has to settle a case on the parents' grounds versus those of a private plaintiff under Rule 23 are important, right, because Rule 23, of course, exists under the Rules Enabling Act. It's not supposed to broaden or curtail any statutory rights. The Attorney General of California has much broader enforcement rights, and inviting this kind of attorney general applies. So no further questions at all. Thank you, counsel. Thank you. I believe that it is correct that the parents' measure sheet group creates issues that potentially, I can't say legally to a heinous standard, but it does raise additional concerns. The Attorney General in California is an elected official, likely might have aspirations for higher office. As such, his beholden interests diverge in important ways from the members of the parents' measure sheet group here. Here we see that funds are being distributed to underserved groups throughout the state of California, despite the fact that the individuals who were harmed are highly educated, mostly highly educated individuals who work for eBay and Intuit, a very limited number of people, and yet the CEPRE award appears to be benefiting the state as a whole. Public attorneys have ample incentive, just as private attorneys do, to ensure that settlements are quick and easy. That's a problem with class actions, but that problem can be exacerbated when, if the Attorney General's duty to represent the public interest conflicts with its duty to the represented individual in the parents' group. Here we have an excellent example where one of the individuals who was involved in the conspiracy, the former CEO of eBay, was herself a publican figure who ran for public office, and it is proper for the, it was proper for the District Court to consider whether that individual has a greater political clout than the parents' measure sheet group that is supposed to be compensated here. Thank you, counsel. Thank you.
judges: Fernandez, Thomas, Murguia